**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:15-CV-00045-JHM**

**JULIE SELLERS**                                                                                     **PLAINTIFF**

**V.**

**CITY OF EARLINGTON and**                                        **DEFENDANTS**
**ARTHUR JOHNSON, in his official
and individual capacity**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion for summary judgment. [DN 14]. Fully briefed, this matter is ripe for decision. For the reasons stated below, the motion for summary judgment is **GRANTED.**

**I. BACKGROUND**

Julie Sellers, the Plaintiff, was employed as the city clerk and treasurer for the Defendant, City of Earlington, Kentucky (hereinafter "the City"). She was hired on January 24, 2007, to that position. At that time and until January 1, 2015, the mayor of Earlington was Mike Seiber. Seiber was defeated in a primary election in 2014 by Defendant Arthur Johnson, and Johnson became mayor following the general election.

Sellers' position as city clerk is mandated by statute for any non-first class city. KRS 83A.085(1). The city clerk's duties include "[m]aintenance and safekeeping of the permanent records of the city . . . [and p]erformance of the duties required of the 'official custodian' or 'custodian' in accordance with KRS 61.870 to 61.882 . . ." KRS 83A.085(3). Sellers fulfilled these obligations by keeping certain city records, including the minutes from city council meetings, locked in a cabinet in her office, which was also kept locked.

On or about January 13, 2015, Mayor Johnson asked Sellers if he could see the books containing the city council minutes. Sellers agreed and gave him the books, but soon after she began to have doubts as to whether it was permissible for the city clerk to allow someone to have possession of the minutes books without supervision. She contacted Chris Johnson of the Kentucky League of Cities, a provider of legal counsel for city clerks, by phone and informed him of the situation. Chris Johnson told Sellers, "You are the official records keeper of those books. And you are going to be the responsible person for those." (Aff. Julie Sellers [DN 14-3] at 59). He further recommended to her that she not let Mayor Johnson have the minutes books. Following this phone conversation, Sellers went back to Mayor Johnson and retrieved the books, informing him that he could review the books in her presence. These events took place over a period of about ten minutes.

On January 16, 2015, Mayor Johnson came to Sellers' office along with Amanda Bone, the Earlington water and utilities clerk, and Brian Ruffin, a member of the city council. Mayor Johnson first requested the minutes books. Sellers refused on the basis of her duty as city clerk and safe-keeper of the records. Mayor Johnson then requested the combination to the lock on the closet containing the minutes books. Sellers again refused on the same basis. Upon confirming that Sellers would not give him the minutes books or the combination, Mayor Johnson gave Sellers a letter he had already prepared, stating that Sellers was being terminated for "insubordination." Sellers signed the paper and left the premises. On February 14, 2016, the Earlington city council voted on and approved the dismissal of Sellers as city clerk.

Sellers filed this action on March 26, 2015, making four individual claims for relief under the First and Fourteenth Amendments to the United States Constitution, KRS 61.102, and the

Kentucky common law tort of wrongful termination. [DN 1]. The Defendants move this Court for summary judgment on all four counts. [DN 14].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Count I of Seller's complaint asserts a claim under 28 U.S.C. § 1983 alleging she was terminated in violation of her First Amendment right to freedom of association. Count III alleges that Sellers was wrongfully terminated under the common law of Kentucky for her refusal to violate KRS 83A.085(3). Count IV alleges that Sellers' termination was in retaliation for her contacting the Kentucky League of Cities for legal counsel, in violation of KRS 61.102.

Count II in Sellers' complaint argues that her due process rights under the Fourteenth Amendment were violated. The Court will address this issue first.

#### A. PROCEDURAL DUE PROCESS

Sellers argues that she was denied due process of law when she was terminated. Specifically, Sellers argues that she could not be terminated without the consent of the city council, which did not vote on her dismissal until almost a month after she was terminated. Further, Sellers argues that the city council did not actually vote to approve her termination. The Court rejects both arguments.

The Sixth Circuit has held that a court should undertake a two-step analysis when considering claims for the violation of due process rights. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004). First, the court must determine whether the Plaintiff has a "life, liberty, or property" interest entitled to due process protection. *Id*. at 479–80. Second, if the court finds that the Plaintiff has a protected interest, it must then determine what process is due. *Id*. at 480.

To prevail on her due process claim, then, Sellers must have a property interest in continued employment with the City. If Sellers does not have a property interest in her position, then she is not entitled to any pre-deprivation process. *See, e.g ., Curby v. Archon*, 216 F.3d 549, 553 (6th Cir. 2000). "A property interest exists and its boundaries are defined by 'rules or

4

understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id*. (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Thus, to determine whether Sellers had a property interest in continued employment with the City, the Court must look to Kentucky law.

Under Kentucky law, certain employees enjoy property interests in their positions by statutory grant. However, the Kentucky statute specifically concerning the employment status of non-elected officials, including the city clerk, provides that non-elected officers "may be removed by the executive authority at will unless otherwise provided by statute or ordinance . . ." KRS 83A.080(2)-(3); *see also* KRS 83A.130(9). Sellers cites to an ordinance, City of Earlington Local Ordinance § 31.03(B), as evidence that she has a property interest in her position. However, § 31.03(B) merely states, "Nonelected city officers may be removed by the Mayor with the approval of the City Council, unless otherwise provided by state law or ordinance." That is exactly what happened here: Sellers was terminated on January 16, 2015, and the city council approved the termination on February 14, 2015. There is nothing in the ordinance that requires the mayor and city council to act contemporaneously. Therefore, Sellers was an at-will employee with no property interest in her position, and she was not constitutionally entitled to any process before her termination.

Sellers also argues that the city council did not actually vote to confirm her termination within the meaning of the ordinance. At the meeting on February 14, 2015, the six-member city council split evenly as to whether Seller's termination should be confirmed. Mayor Johnson cast the deciding vote in favor of termination to break the tie. Sellers argues that this does not actually amount to the city council confirming her termination. However, City of Earlington

Local Ordinance § 32.20(B) states that "[t]he Mayor may participate in Council proceedings, but shall not have a vote, except that he or she may cast the deciding vote in case of a tie." Under this ordinance, the vote to confirm Sellers' termination was valid.

Because Sellers did not have a property interest in her position, no process was required to dismiss her as city clerk, and the actions of the City and Mayor Johnson did not deprive her of due process in violation of the Fourteenth Amendment. Therefore, the Defendants are entitled to judgment as a matter of law, and the motion for summary judgment as to Count II is **GRANTED**.

### B. FREEDOM OF ASSOCIATION

Sellers asserts in Count I that her termination violated her right to freedom of association under the First Amendment. Specifically, Sellers' argues that she was terminated, in whole or in part, due to her continuing relationship with former Mayor Mike Seiber. Sellers' complaint [DN 1], affidavit [DN 14-3], and response in opposition to summary judgment [DN 17] all assert that Mayor Johnson continuously threatened Sellers with termination due to her relationship with Seiber. Even taking these assertions in a light most favorable to the Plaintiff, Sellers is not entitled to relief under 28 U.S.C. § 1983.

The freedom to "enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). However, only two types of intimate or private relationships are entitled to protection under the First Amendment. First, there is "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion*." Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). Second, the Supreme Court has "recognized

6

a certain right of intimate association[,] reasoning that 'choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.'" *Marcum v. McWhorter*, 308 F.3d 635, 639 (6th Cir. 2002) (quoting *Roberts*, 468 U.S. at 617–18).

Under the facts alleged by the Plaintiff, Sellers does not have a claim under the First Amendment, as her relationship with former Mayor Seiber was not the type of relationship protected by the constitutional freedom of association. Sellers has not made any allegation that her association with Seiber was for the purposes of engaging in constitutionally protected expressive activities. And the relationship between Sellers and Seiber, which from Seller's affidavit appears to be nothing more than a casual friendship between a former employer and employee, is not the type of relationship that is so intimate that it must be constitutionally protected against intrusion by the government. *See Bracken v. Collica*, 94 F. App'x 265, 269–70 (6th Cir. 2004) (finding no intrusion upon freedom of association when assistant to former mayor was terminated by current mayor, as "even if [the plaintiff] was fired due to her association with [former Mayor] Martin . . . this relationship [that of mayor and his full-time assistant] . . . is not the sort of intimate association protected by the First Amendment").

Therefore, even if Sellers was in fact dismissed because of her relationship with former Mayor Seiber, her relationship was not of the type that is afforded constitutional protection. Therefore, the Defendants' motion for summary judgment as to Count I is **GRANTED**.

### C. WRONGFUL TERMINATION

Sellers asserts in Count III that she was terminated in violation of Kentucky state law. Specifically, she alleges that Mayor Johnson ordered her termination due to her refusal to violate

7

KRS 83A.085(3), which required her to act as official custodian of the city's records, and that termination on those grounds amounts to the Kentucky common law tort of wrongful termination. However, the Court rejects this argument, as Mayor Johnson never asked Sellers to violate any law.

"Generally, in the absence of a specific contractual provision to the contrary, employment in Kentucky is terminable at-will, meaning that an employer may ordinarily discharge an employee 'for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Miracle v. Bell Cnty. Emergency Med. Servs*., 237 S.W.3d 555, 558 (Ky. Ct. App. 2007) (quoting *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)). Additionally, there is a narrow common law exception to the employment-at-will doctrine, which is based on public policy. *See Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). The essential elements to pleading a common law cause of action for wrongful discharge in violation of public policy under Kentucky law are:

> 1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
> 2) That policy must be evidenced by a constitutional or statutory provision.
> 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.* at 401. However, the Supreme Court of Kentucky has only recognized two situations where "grounds for discharging an employee are so contrary to public policy as to be actionable absent explicit legislative statements prohibiting the discharge." *Id.* at 402 (internal quotations omitted). It must be a situation "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment," or "when the reason for a

8

discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.*

Sellers argues that she was terminated for her refusal to violate a law, mainly KRS 83A.085(3) and its accompanying duties for city clerks acting as official custodians of city records. The Defendants argue that Sellers was never asked to violate a law when she was ordered to turn over the minutes books and lock combination. In support of this position, the Defendants cite to a 1982 opinion from the Kentucky Attorney General's Office. 1982 Ky. Op. Atty. Gen. 2-337, 1982 WL 177091 (June 16, 1982). This opinion, in deciding that a city council member does not have a right to have unsupervised access to records in the city clerk's office, noted that the duties of the city clerk included

> the maintenance and safekeeping of the permanent records of the city. The officer holding the position of Clerk is also designated as the official custodian of the records within the meaning of the open records act . . . Thus, the Clerk is responsible for the safekeeping of the city records and is certainly entitled not only to a key to wherever the records are stored, but it is her responsibility that they remain in her safekeeping as the open records act provides . . .

*Id.* However, the opinion goes on to state the following:

> At the same time, the Mayor, as the chief administrative officer of the city pursuant to the terms of KRS 83A.010(6) and 83(a).130(3), has the responsibility, rather than the council, to see that the affairs of the city are properly administered and, as a consequence, we see no legal objection to he [the Mayor] along with the Clerk being authorized to receive a key to the official city records to the exclusion of anyone else, including members of the city council.

*Id.* Thus, the opinion concludes that the mayor would be entitled to have unsupervised access to official city records.

While opinions of the Attorney General are not binding, "this court can . . . afford them great weight." *Louisville Metro Dept. of Corrections v. King*, 258 S.W.3d 419, 422 (Ky. Ct.

9

App. 2007) (citing *Woodward, Hobson & Fulton, L.L.P. v. Revenue Cabinet*, 69 S.W.3d 476, 480 (Ky. Ct. App. 2002). The Court agrees with the Attorney General's interpretation of the relevant statutes. The official duties of the city clerk under KRS 83A.085(3) include "maintenance and safekeeping of the permanent records of the city . . . [and p]erformance of the duties required of the 'official custodian' or 'custodian' in accordance with KRS 61.870 to KRS 61.882." However, the statutory provisions cited by the Attorney General's opinion that relate to mayoral responsibilities include the following:

> The executive authority of the city shall be vested in and exercised by the mayor. The mayor shall enforce the mayor-council plan, city ordinances and orders and all applicable statutes. He shall supervise all departments of city government and the conduct of all city officers and employees under his jurisdiction . . .

KRS 83A.130(3). Under this statute, the mayor has the duty to both administer the affairs of the city and supervise all city officers, including the city clerk. Both of these duties would require that the mayor have unencumbered access to the city records. In order to administer the affairs of the city, the mayor must be able to have access to all records that may be relevant to that task, including the minutes book for meetings of the city council. And in order to supervise the city clerk, the mayor must have access to the city records to ensure that they are being properly maintained. Thus, the Attorney General's opinion correctly concluded that KRS 83A.085(3) does not prohibit the mayor from having access to the city records.

Thus, the Court rejects Seller's argument that Mayor Johnson terminated her for her refusal to violate the law. Mayor Johnson requested that Sellers give him access to the records; he did not ask her to not keep and maintain the records, as KRS 83A.085(3) requires of her. While KRS 61.870 to KRS 61.882 details the procedures for obtaining public records from the city clerk, this clearly pertains to how the public may obtain these records, not the chief

executive of the city whose duties require him to have access to the city records. Because Sellers was not terminated for her refusal to violate the law, she remained an at-will employee, as no public policy exception under *Grzyb* is applicable. As an at-will employee, Sellers has no grounds upon which she could claim she was wrongfully terminated. Thus, the Defendants' motion for summary judgment as to Count III is **GRANTED**.

### D. RETALIATORY TERMINATION

Finally, Sellers alleges in Count IV of the complaint that she was terminated by Mayor Johnson in retaliation for her contacting the Kentucky League of Cities for legal counsel, and that termination on these grounds was in violation of KRS 61.102. However, the Court rejects this argument.

Kentucky courts apply a modified version of the *McDonnell Douglas* burden-shifting scheme to retaliation claims. *Kentucky Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991) (relying on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Accordingly, a plaintiff, in making out a prima facie case, must show that 1) she engaged in a protected activity; 2) she was disadvantaged by an act of her employer; and 3) there is a causal connection between the activity engaged in and the employer's act. *Handley*, 827 S.W.2d. at 701. The third element of the test requires that the employee establish that her engagement in a protected activity was "a substantial and motivating factor but for which the employee would not have been discharged." *Henderson v. Ardco, Inc*., 247 F.3d 645, 654 (6th Cir. 2001) (quoting *First Property Management Corp. v. Zarebidaki*, 867 S.W.2d 185, 188–189 (Ky. 1993). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the decision. The burden then shifts back to the employee

11

to show that "but for" the protected activity, the adverse action would not have occurred. *Handley*, 827 S.W. at 701.

> KRS 61.102(1) states in relevant part,
>
>> No employer shall subject to reprisal . . . any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of . . . any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law . . . or any facts or information relative to actual or suspected . . . abuse of authority . . .

The Court need not decide whether the Kentucky League of Cities is an "appropriate body or authority" under KRS 61.102(1), as Sellers has not established a causal connection between contacting the organization and her discharge. All that Sellers has established is that she contacted the Kentucky League of Cities for legal counsel on January 13, 2015, Mayor Johnson was aware of her contact with the organization, and she was terminated on January 16, 2015. Taking the facts in a light most favorable to the plaintiff, Sellers has not established anything more than the contemporaneous nature of the two events, and "absent other evidence of retaliation, a temporal relation is insufficient to survive summary judgment" for a claim of retaliatory discharge. *Jenkins v. City of Russellville*, 2007 WL 2081106, at *7 (W.D. Ky. Jul. 18, 2007) (citing *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001)). Sellers has not alleged that Mayor Johnson ever expressed displeasure at her contacting the organization or expressly mentioned that her termination was due to her contacting the organization. Without more evidence of a causal connection between her action and termination, Sellers' claim cannot survive. Therefore, the Defendants' motion for summary judgment as to Count IV is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED**.

                                                  **Joseph H. McKinley, Jr., Chief Judge**
                                                  **United States District Court**

September 25, 2016

cc: counsel of record